**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-01820-NYW-TPO

THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,

Plaintiff,

v.

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,

Defendant.

---

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

---

This matter comes before the Court on Plaintiff's Motion for Default Judgment Against Defendant (the "Motion") filed by The Cincinnati Specialty Underwriters Insurance Company ("Plaintiff" or "CSU"). [Doc. 11]. Defendant Mesa Underwriters Specialty Insurance Company ("Defendant" or "MUSIC") has not responded to the Motion, and the time to do so has elapsed. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, the Motion is respectfully **GRANTED in part**.

**BACKGROUND**

The Court draws the following facts from the Complaint for Declaratory Relief and Reimbursement ("Complaint"), [Doc. 1], and the exhibits attached to the Motion. In deciding the Motion, the Court accepts these facts as undisputed. *Mrs. Condies Salad Co. v. Colo. Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1217 (D. Colo. 2012).

Cameron Edward Stuart is the principal of Stuart Architectural LLC, d/b/a Stuart Arc Design Build (collectively, "Stuart"). [Doc. 1 at ¶ 22]. In 2019, Stuart agreed to serve as a designer and general contractor of a new build single-family residence for Derek and

Kelly Reiber (the "Reibers") in Steamboat Springs, Colorado (the "Project"). [*Id.* at ¶ 8]. Project construction began in 2019. [*Id.* at ¶ 11]. During construction for the project, Stuart was insured successively by MUSIC and CSU: MUSIC issued a general liability coverage policy to Stuart effective March 1, 2020 through March 1, 2021 (the "MUSIC Policy"), and CSU issued a general liability coverage to Stuart effective March 1, 2021 through March 1, 2022 (the "CSU Policy" and together with the MUSIC Policy, the "Policies"). [*Id.* at ¶¶ 13, 20–21]. The Policies contained similar language and provided that each insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [*Id.* at ¶ 24]. The MUSIC Policy additionally provided that MUSIC was obligated to provide a defense and indemnity to Stuart concerning claims which fell within the coverage scope and effective period of the MUSIC Policy. [*Id.* at ¶ 28].

In October of 2021, the Reibers issued Stuart a Notice pursuant to Colorado Revised Statute Section 13-20-801 (the "CDARA Notice") stating that various elements of the Project were defectively and/or deficiently designed and/or constructed, resulting in damages. [*Id.* at ¶ 15]. When the Reibers' claims were not resolved during the CDARA Notice process, they filed suit against Stuart for construction defects and resulting damages (the "Underlying Action"). [*Id.* at ¶ 16]. In the Underlying Action, the Reibers alleged that the damages began at the time of construction and continued during the time that the MUSIC Policy was in effect. [*Id.* at ¶¶ 17–19]. Discovery in the Underlying Action identified multiple construction defects and resulting damages that occurred during the MUSIC Policy period. [*Id.* at ¶ 19].

In February of 2022, after receiving notice of the Underlying Action, CSU assumed

Stuart's defense and retained counsel for Stuart. [*Id.* at ¶ 29]. After CSU determined that its duty to defend was triggered, it issued a full reservation of rights under the CSU Policy. [*Id.* at ¶ 31]. In this reservation of rights, CSU advised Stuart of its obligation to place prior insurers on notice of the Underlying Action. [*Id.*]. Stuart notified MUSIC about the Underlying Action on or about September 13, 2022. [*Id.* at ¶ 32]. MUSIC retained counsel, Bradley Damm ("Mr. Damm"), to represent Stuart, and he filed his appearance in the Underlying Action. [*Id.* at ¶ 33]. Mr. Damm coordinated with CSU's retained counsel about the representation and informed MUSIC that legal costs and expenses would be shared with CSU. [*Id.* at ¶¶ 33–34]. He also sent three status reports to MUSIC with updates about the case and strategy recommendations. [*Id.* at ¶¶ 34–36, 38, 45–47]. In those status reports, Mr. Damm provided MUSIC with exposure evaluations and recommended setting mediation. [*Id.* at ¶¶ 45–47, 50].

MUSIC "eventually agreed to participate in the defense on a 50/50 basis," but it did not do so. [*Id.* at ¶ 40]. CSU's retained counsel drafted and served all of Stuart's pleadings, motions, disclosures, and discovery; paid all expert fees and expenses; and decided on strategy without much input from MUSIC. [*Id.* at ¶¶ 39–41]. After the Parties scheduled a mediation, and the Reibers made Stuart a settlement offer of $1,050,000 to resolve the Underlying Action, CSU reached out to MUSIC regarding a time-on-risk agreement, proposing 72.23% of the risk on MUSIC and 27.77% of the risk on CSU. [*Id.* at ¶¶ 48, 51]. After initially refusing the proposal, MUSIC then counter proposed a 50/50 split time-on-risk arrangement for purposes of the upcoming mediation. [*Id.* at ¶ 53]. CSU agreed to that split for mediation purposes, [*id.*], but on the day of the mediation MUSIC stopped contributing to settlement negotiations with a final offer of $65,000, [*id.* at ¶ 55].

Mediation was ultimately unsuccessful, and Stuart retained personal insurance coverage counsel. [*Id.* at ¶ 56]. Stuart's counsel wrote to both CSU and MUSIC, demanding that the insurers cause the Underlying Action to be settled. [*Id.* at ¶ 57]. MUSIC continued to refuse to engage in further settlement negotiations, even as Mr. Damm advised MUSIC of the funds needed for settlement and the exposure for MUSIC should the case go to trial. [*Id.* at ¶¶ 58–59]. CSU continued to attempt to negotiate a time-on-risk agreement with MUSIC but the Parties could not come to an agreement. [*Id.* at ¶¶ 61–65]. Meanwhile, CSU continued to negotiate on Stuart's behalf and eventually settled the Underlying Action in the amount of $500,000, without contribution from MUSIC. [*Id.* at ¶¶ 60, 66]. Prior to settlement, CSU informed MUSIC of its plan to settle the Underlying Action and provided MUSIC with one last chance to participate in the settlement on a 50/50 basis. [*Id.* at ¶ 67]. In the end, "CSU's defense and settlement payments far exceeded its pro rata share of the total exposure." [*Id.* at ¶ 42].

CSU then brought this case against MUSIC, alleging causes of action for equitable subrogation, equitable contribution, unjust enrichment, and declaratory judgment.[1] [*Id.* at ¶¶ 68–96]. MUSIC has not responded to the Complaint, had counsel enter an appearance, or otherwise defended this case. Accordingly, pursuant to Federal Rule of Civil Procedure 55(a), CSU moved for and obtained an entry of default. [Doc. 8; Doc. 9].

---

[1] Although pleaded as a separate cause of action, the Declaratory Judgment Act neither extends federal jurisdiction nor creates a new cause of action; it merely "enlarges the range of remedies available." *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (brackets omitted) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)); *Allen v. United Servs. Auto. Ass'n*, No. 16-cv-01056-RM-NYW, 2017 WL 4221452, at *1 n.1 (D. Colo. July 10, 2017), *aff'd*, 907 F.3d 1230 (10th Cir. 2018). In other words, a declaratory judgment is only "a form of relief dependent upon a valid cause of action." *Allen*, 2017 WL 4221452, at *1 n.1.

CSU now moves for a default judgment against MUSIC on all of its claims, seeking: (1) an award of MUSIC's dollar-for-dollar defenses costs and its time-on-the-risk share of the settlement, (2) a declaration that MUSIC owed and breached duties to defend and indemnify, (3) prejudgment and post-judgment interest, and (4) leave to file a post-judgment motion to quantify reasonable prosecution fees.[2] [Doc. 11 at 15].

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, a party may apply to the Court for a default judgment after a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(a), (b)(2). But there is no right to a default judgment, and "the entry of a default judgment is committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

Determining whether to enter default judgment requires the Court to first resolve whether it has jurisdiction, and if it does, whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendants. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd.*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *5 (D. Colo. June 8, 2015) ("There must be a sufficient basis in the pleadings for the

---

[2] Though not required by the Federal Rules of Civil Procedure, the Honorable Timothy P. O'Hara held a Status Conference on this matter on October 3, 2025, during which he ordered Plaintiff's counsel to serve the adjuster for MUSIC with copies of the Complaint [Doc. 1], Amended Motion for Entry of Default [Doc. 8], the Clerk's Entry of Default [Doc. 9], and Plaintiff's Motion for Default Judgment [Doc. 11]. [Doc. 14]. Plaintiff's counsel filed a Declaration asserting that she had done so, attaching a copy of the cover letter sent to Greg Shaw, Claims Tech Specialist for MUSIC at P.O. Box 7264, London, KY 40762. [Doc. 15; Doc. 15-1]. To date, no entry of appearance or any other filing has been made for MUSIC in this action.

judgment entered." (quotation omitted)). If the Court lacks jurisdiction—either subject matter over the action or personal over the defendant—default judgment cannot enter. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997).

By its default, MUSIC admits CSU's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts established. *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The facts alleged in the Complaint which are deemed admitted upon default may form the basis for the Court's entry of a default judgment. *See, e.g.*, *Salba Corp. v. X Factor Holdings, LLC*, No. 12-cv-01306-REB-KLM, 2015 WL 5676690, at *1 (D. Colo. Sept. 28, 2015). A court may also consider undisputed facts set forth in affidavits and exhibits. *Mrs. Condies Salad*, 858 F. Supp. 2d at 1217.

But a party in default does not admit conclusions of law, only allegations of fact, and so those allegations must be enough to establish substantive liability. *See Bixler*, 596 F.3d at 762; *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *3 (D. Colo. May 24, 2017) (citing 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). In diversity cases such as this one, courts "apply Colorado law and interpret insurance policies as a Colorado court would." *Leprino Foods Co. V. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006); *see also Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) ("A federal court sitting in diversity applies the substantive law . . . of the forum state.").

## ANALYSIS

### I. Jurisdiction

#### A. Subject Matter Jurisdiction

Starting with subject matter jurisdiction, the Court finds that it possesses diversity jurisdiction under 28 U.S.C. § 1332. Federal diversity jurisdiction exists in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). When determining citizenship, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Here, CSU alleges that it is a Delaware corporation with its principal place of business in Ohio, while MUSIC is a New Jersey corporation with its principal place of business in New Jersey. [Doc. 1 at ¶¶ 2–3]; *see also* [Doc. 8-1 at ¶¶ 3–4]. CSU is thus diverse from MUSIC.

CSU has also met the amount-in-controversy requirement, given that it is seeking at least $250,000 in contribution from MUSIC as reimbursement for the $500,000 settlement in the Underlying Action, in addition to recovery of other fees and costs. [Doc. 1 at ¶ 5]. With both requirements satisfied under § 1332(a), the Court concludes that it has diversity jurisdiction over this case.

#### B. Personal Jurisdiction

Turning to personal jurisdiction, the Court first considers whether CSU adequately served MUSIC. Adequate service on a defendant is a prerequisite to the Court's personal jurisdiction over that defendant. *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1292 (10th Cir. 2020).

Here, CSU served MUSIC by personal service to the Colorado Commissioner of Insurance, its agent for service of process as designated in the "Service of Suit Colorado" endorsement section of the MUSIC Policy, under which this suit arises. *See* [Doc. 5; Doc. 8-1 at ¶¶ 7–9; Doc. 8-2]; *see also* Fed. R. Civ. P. 4(h)(1)(B). Additionally, prior to service, CSU's counsel confirmed with the Colorado Division of Insurance that the Commissioner remained MUSIC's appointed agent for service of process in Colorado. [Doc. 8-1 at ¶ 8]. And the Proof of Service shows that the summons was served on July 8, 2025 on an individual who is designated by law to accept service on behalf of the Colorado Division of Insurance. [Doc. 5 at 2]. In addition, as discussed above, Judge O'Hara ordered, and Plaintiff accomplished, service upon MUSIC's claim adjuster. *See supra* n.1. The Court finds that CSU adequately served MUSIC.

The Court next considers whether it may exercise personal jurisdiction over MUSIC. A court may exercise general personal jurisdiction or specific personal jurisdiction over a defendant. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262, (2017). General jurisdiction means that a court may exercise personal jurisdiction over an out-of-state defendant for all purposes. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). General jurisdiction is available if the defendant's affiliations with the forum state are "so continuous and systematic" that it is "essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court may exercise specific personal jurisdiction over an out-of-state defendant only if the cause of action relates to the defendant's contacts with the forum state. *Old Republic*, 877 F.3d at 904. In other words, "specific jurisdiction is proper if there is 'an affiliation between the forum and the underlying controversy, principally, an

activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (quoting *Bristol-Myers Squibb*, 582 U.S. at 262).

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 904. A nonresident defendant has minimum contacts with the forum state when it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant may reasonably anticipate being subject to suit in the forum state if (1) the defendant has "purposefully directed its activities at residents of the forum state," and (2) the "plaintiff's injuries [arose] out of the defendant's forum-related activities." *Old Republic*, 877 F.3d at 904 (cleaned up).

Here, MUSIC "is licensed to do business in the State of Colorado as an insurance company" and contracted to provide insurance for a Colorado company, Stuart, related to its work on an architectural project in Colorado. [Doc. 1 at ¶¶ 1, 3, 8]. And CSU's injuries arise out of MUSIC's alleged failures to defend and indemnify its Colorado insured in a lawsuit in Colorado state court. The Court thus finds that it has specific personal jurisdiction over MUSIC. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222–23 (1957) ("It is sufficient for purposes of due process [and the minimum contacts test] that the suit was based on a contract which had substantial connection with that State."); *Mordhorst Cleaning, LLC v. Allstate Ins. Co.*, No. 21-cv-02678-DDD-SKC, 2021 WL 6125404, at *1 (D. Colo. Dec. 28, 2021) (finding specific personal jurisdiction met where defendant

insurer "is licensed to do business in Colorado, the insurance policy was purchased in Colorado, and the insurance policy was intended to provide coverage for a property in Colorado").

In sum, the Court finds that it possesses both subject matter and personal jurisdiction. The Court further notes that the Motion is procedurally proper because it follows the Clerk of Court's entry of default against MUSIC. *See* [Doc. 9].

## II. Liability

Once the jurisdictional requirements are met, the Court must determine "whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendant." *Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1168 (D. Colo. 2023) (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)). With this standard in mind, the Court first addresses the threshold question for all of CSU's claims for relief: whether the well-pleaded allegations and attendant evidence establish that MUSIC had a duty to defend and indemnify Stuart in the Underlying Action under the MUSIC Policy.

The MUSIC Policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," as well as the "duty to defend the insured against any 'suit' seeking those damages." [Doc. 1 at ¶ 24; Doc. 11-1 at 29]. "Suit" means "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged," and "property damage" is defined as, in relevant part, "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured." [Doc. 1 at ¶ 25; Doc. 11-1 at 43, 44]. The

MUSIC Policy limits the application of its insurance to "property damage" that (1) "is caused by an 'occurrence' that takes place in the 'coverage territory,'" (2) "occurs during the policy period," and (3) was not known to the insured (or employee of the insured) prior to the policy period. [Doc. 1 at ¶ 26; Doc. 11-1 at 29]. "Occurrence" is defined as "an accident, including continuous or repeated exposure to the same general harmful conditions," [Doc. 1 at ¶ 27; Doc. 11-1 at 43], "coverage territory" is defined to include the United States of America, [Doc. 1 at ¶ 26; Doc. 11-1 at 41], and the "policy period" was March 1, 2020–March 1, 2021, [Doc. 1 at ¶ 20; Doc. 11-1 at 2].

"Under Colorado law, the duty of an insurer who has refused to defend its insured is determined 'solely on the allegations contained in the complaint' against the insured, as read against the coverage of the policy." *KF 103-CV, LLC v. Am. Family Mut. Ins. Co.*, 630 F. App'x 826, 829 (10th Cir. 2015) (quoting *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 827 (Colo. 2004)); *Cotter*, 90 P.3d at 829 ("Thus, we base the determination of an insurer's duty to defend on the allegations contained in the underlying complaint when such insurer refuses to defend his insured."). Other than two exceptions that CSU does not argue are applicable in this case, neither the Tenth Circuit nor Colorado courts have deviated from this so-called "complaint rule." *See Chavez v. Ariz. Auto. Ins. Co.*, 947 F.3d 642, 647–48 (10th Cir. 2020). In fact, the Tenth Circuit recently declined to recognize a third exception to the complaint rule given the fact that Colorado courts have never applied or ratified any exceptions. *Id.* The Tenth Circuit instead reaffirmed the application of the complaint rule in cases "challenging the failure to defend," i.e. "to determine whether the insurer's duty to defend was properly triggered in the underlying litigation." *Id.* at 645.

CSU alleges that in the complaint in the Underlying Action (the "Underlying Complaint"), the Reibers alleged that "damages began at the time of construction and continued during the MUSIC Policy Period." [Doc. 1 at ¶ 17]. While CSU alleges that there were "several construction defects that have caused and continue to cause damages," it cites just one specific allegation from the Underlying Complaint: that "[t]he end grain of the cedar siding [was] not properly sealed and was left exposed to the elements from May 2020 until August 2021, which stained the material" and was "not coml[iant] with industry standards for structures in a mountain environment." [*Id.* at ¶ 18]; *see also* [Doc. 11-3 at ¶ 15.h].[3]

The Court agrees with CSU that this allegation in the Underlying Complaint was sufficient to trigger MUSIC's duties under the MUSIC Policy. *See* [Doc. 11 at 7–8]. Colorado Revised Statute Section 13-20-808 provides that in Colorado, "court[s] shall presume that the work of a construction professional that results in property damage, including damage to the work itself or other work, is an accident unless the property damage is intended and expected by the insured." Colo. Rev. Stat. § 13-20-808(3); *see also Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 12878–79 (10th Cir. 2011) (Colo Rev. Stat. § 13-20-808 defines the term "accident" for purposes of

---

[3] While CSU alleges that discovery in the Underlying Action "expanded on allegations of damages that began during MUSIC's Policy period," including "roof leaks [that] caused ice dams and water intrusion damaging interior drywall and the tongue and groove ceiling," [Doc. 1 at ¶ 19; Doc. 11], CSU does not explain why the Court may consider any information outside the Underlying Complaint in its analysis of whether the Complaint states a facially plausible claim. The Court finds that it may not consider allegations or evidence regarding documents outside of the Underlying Complaint, such as "[f]acts developed in the Underlying Action" or MUSIC's counsel's "three status reports to MUSIC." [Doc. 11 at 8]; *see Chavez*, 947 F.3d at 647 ("[A]n insured cannot rely on extrinsic evidence to show that a duty to defend exists.").

Colorado insurance law and settles cases where general contractors damaged property with "faulty workmanship" but did not intend or expect to). With no allegations that Stuart intended or expected to damage the siding, the allegation of improper sealing of the cedar siding thus qualifies as an "occurrence" under the MUSIC Policy. And because the occurrence happened during the MUSIC Policy period (May 2020 until March 2021), and it cannot have been known to Stuart prior to the MUSIC Policy period given that the improper sealing began while the MUSIC Policy was already in effect, *see* [Doc. 1 at ¶¶ 20, 26–27; Doc. 11-1 at 2, 29, 41, 43], it qualifies as "property damage" that is covered by the MUSIC Policy. With its duty to defend triggered, MUSIC had an obligation to defend all the claims in the Underlying Action. *See TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App. 1997) ("If [the allegations in the underlying action] potentially come within policy coverage, or if there is even some doubt, the insurer must defend the claim. The insurer must defend against all claims if some potentially covered claims are alleged." (citing *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083 (Colo. 1991))); *Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1195 (10th Cir. 2000) (same).

Having determined that CSU plausibly alleged that MUSIC's duties to defend were triggered upon the filing of the Underlying Complaint, the next issue is whether default judgment is appropriate on CSU's claims. *See Otter Prods., LLC v. Wang*, No. 18-cv-03198-CMA-SKC, 2019 WL 1403022, at *4 (D. Colo. Mar. 28, 2019) ("Default judgment is appropriate if there is a sufficient basis in the pleadings for the judgment and the unchallenged facts constitute a legitimate cause of action.").

***Equitable Subrogation.*** "Subrogation is defined as the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Cotter*, 90 P.3d at 833 (quotation omitted). And "equitable subrogation is an equitable principle that allows a party secondarily liable who has paid the debt of the party who is primarily liable to institute a recovery action in order to be made whole." *Id.* (cleaned up). In the insurance context, "insurers that have paid an insured's claim often rely on the doctrine to recover from other obligated parties." *Id.* at 834; *see also Bituminous Cas. Corp. v. Hartford Cas. Ins. Co.*, No. 12-cv-00043-WYD-KLM, 2013 WL 452374, at *8 (D. Colo. Feb. 6, 2013) ("The Colorado Supreme Court has identified subrogation as a proper means of recovery by an insurer who has honored its obligations . . . from a co-insurer . . . who has not." (citing *Nat'l Cas. Co. v. Great Sw. Fire Ins. Co.*, 833 P.2d 741, 747–48 (Colo. 1992))).

The Court agrees that the alleged facts, deemed as true, support CSU's equitable subrogation claim. As the Court previously found, the Underlying Complaint alleged that property damage—namely, the cedar siding that was damaged as a result of improper sealing—took place during MUSIC's and CSU's successive coverage periods. Thus, both MUSIC and CSU had a duty to defend Stuart in the Underlying Action pursuant to their respective policies, i.e. they are both obligated parties. Because MUSIC did not meaningfully participate in Stuart's defense and did not contribute to the settlement, *see* [Doc. 1 at ¶¶ 32–42, 48–67], the well-pled allegations establish that CSU, as the insurer who honored its obligations, is entitled to equitable subrogation from MUSIC, its co-insurer who has not honored its obligations. The Court therefore **GRANTS** default judgment on CSU's equitable subrogation claim.

***Equitable Contribution.*** Equitable contribution is recognized under Colorado law as "a means of apportioning a loss between two or more insurers who cover the same risk so that each insurer pays its fair share of the common obligation." *Cont'l W. Ins. Co. v. Colony Ins. Co.*, 69 F. Supp. 3d 1074 (D. Colo. 2014) (quotation omitted). Equitable contribution is available to an insurer who paid for an insured's defense and now seeks contribution from a co-insurer owing the same duty to defend. *Nat'l Cas. Co.*, 833 P.2d at 747–48; *Cont'l W. Ins. Co.*, 69 F. Supp. 3d at 1086 (holding that "a participating insurer is entitled to equitable contribution from a non-participating insurer, both having a duty to defend, when the former provides a complete defense to an insured against a common risk . . . arising throughout the successive coverage periods of both insurers."). That is precisely the situation that CSU alleges here. For the same reasons as stated above, CSU has plausibly alleged its claim for equitable contribution, and the Court **GRANTS** default judgment on this claim.

***Unjust Enrichment.*** Because CSU seeks the same damages for each of its equitable subrogation, equitable contribution, and unjust enrichment claims, *see* [Doc. 1 at 20; Doc. 11 at 12–13], the Court need not consider CSU's request for default judgment on CSU's unjust enrichment claim. *See Gentry v. Kostecki*, No. 20-cv-01284-WJM-STV, 2022 WL 168704, at *3 (D. Colo. Jan. 19, 2022) ("While these causes of action would in theory permit Plaintiff to recover the same amount she is already recovering through her breach of contract claim [on which the court granted default judgment], the bar against double recovery precludes her from doing this.").

***Declaratory Judgment.*** CSU argues that it is entitled to default judgment on its declaratory judgment claim because "[d]eclaratory relief will promptly resolve the parties'

ongoing uncertainty over defense cost-sharing, indemnity allocation, and trigger." [Doc. 11 at 11–12]. As discussed above, a request for declaratory relief is not a separate cause of action. *See supra* n.1. And given that the Court has already granted default judgment on the equitable subrogation and contribution claims, the Court will necessarily decide the question of cost-sharing and indemnity allocation while resolving the damages portion of this Motion. The Court thus "discerns no reason," and CSU offers none, "for issuing a declaratory judgment when the parties' obligations under the insurance polic[ies] will necessarily be resolved in the context of" CSU's other claims. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1196 (D. Colo. 2018).

## III. Relief

### A. Damages

Default judgment may not be entered until the amount of damages has been ascertained, and such damages must be supported by "[a]ctual proof." *Mrs. Condies Salad*, 858 F. Supp. 2d at 1219–20. "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true." *Cunningham v. Nationwide Ins. of Am.*, No. 21-cv-01335-PAB-MDB, 2022 WL 3920832, at *5 (D. Colo. Aug. 30, 2022); *Reg'l Dist. Council v. Mile High Rodbusters*, 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015); *see also K.N.J., Inc. v. Ames-Granite*, No. 15-cv-02009-PAB-KMT, 2017 WL 1133431, at *2 (D. Colo. Mar. 27, 2017) ("The Court cannot just accept [third party plaintiff's] statement of the damages." (quotation omitted)). Actual proof includes "detailed affidavits or documentary evidence." *See K.N.J.*, 2017 WL 1133431, at *2 (quoting *Seme v. E&H Prof'l Sec. Co.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19,

2010)); *see also Jackson v. AML Constr. & Design Grp.*, No. 16-cv-01847-PAB-MEH, 2017 WL 2812823, at *2 (D. Colo. June 29, 2017) ("[T]he Court cannot accept conclusory statements as to damages."). "This requirement ensures that a plaintiff is not awarded more in damages than can be supported by actual evidence." *Villanueva v. Acct. Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1075 (D. Colo. 2015) (citing *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949)).[4]

In Colorado, "an insurer that voluntarily pays more than its share of a loss" is entitled to "pro rata contribution" from a co-insurer of its defense costs and settlement payment. *Nat'l Cas. Co.*, 833 P.2d at 747–48. The question for this Court, then, is how to allocate these costs and payments between CSU and MUSIC. The Court begins, as always, with the Policies.

***The Policies.*** Both the CSU Policy and the MUSIC Policy contain "Other Insurance" clauses. *See* [Doc. 11-1 at 40; Doc. 11-2 at 31–32]. These clauses are identical, providing in pertinent part that:

> **4. Other Insurance.**
> If other valid and collectible insurance is available to the insured for a loss we cover . . ., our obligations are limited as follows:
>
> **a. Primary Insurance**
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
> . . .

[4] "[A] court may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983). Here, the Court finds that a hearing is not necessary as to Plaintiff's request for reimbursement of all defense costs because the amount at issue is capable of mathematical calculation. However, the Court reserves on whether a hearing will be necessary for Plaintiff's request for settlement costs.

> **c. Method Of Sharing**
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

[Doc. 11-1 at 40; Doc. 11-2 at 31–32].

***Defense Costs.*** These provisions plainly provide that each insurer will contribute equal parts to the defense, up to its applicable limit of insurance. And this method of equal sharing is favored by Colorado courts. *See Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 347–48 (Colo. 1997) (when two insurers are "co-primary insurers," they must "contribute dollar-for-dollar, each paying one-half of the loss until one policy is exhausted"). Thus, the Court agrees with CSU that MUSIC should reimburse its defense costs dollar-for-dollar. *See* [Doc. 11 at 12]. CSU's actual proof—including invoices, receipts, and an attorney affidavit, [Doc. 11-13 at ¶ 7; Doc. 11-7 at 89, 108, 117, 126, 141, 144, 150, 189, 195–363; Doc. 11-14; Doc. 11-15]—supports its argument that the total amount it spent on Stuart's defense was $133,821.65, making MUSIC's share $66,910.82, *see also* [Doc. 11-1 at 9 (MUSIC's Policy general aggregate policy limit is $2,000,000, with a limit per occurrence of $1,000,000)].

***Settlement Costs.*** As for the $500,000 that CSU paid to settle the Underlying Action, CSU requests that the Court calculate the amount that MUSIC should contribute using the time-on-the-risk method. [Doc. 11 at 12]. But CSU does not explain why the time-on-the-risk method should be employed for apportioning the settlement payment given the plain language of the Policy section entitled "Method of Sharing." Even assuming that the time-on-the-risk method is appropriate, CSU fails to adequately support its proposed allocation. CSU contends that MUSIC's time-on-the-risk share is 62.02%,

i.e., roughly $310,000, [*id.*], relying solely on an attorney declaration stating that the figure is "[b]ased on policy periods and the continuous-damage dates supported by Exs. 3–4 and CSU's claim chronology," [Doc. 11-13 at ¶ 14]. But neither the Motion nor the declaration expands on this statement or explains how counsel used the exhibits to arrive at 62.02%. While this Court presumes it arises from the division of policy coverage between March 1, 2020 and October 18, 2021, it is not clear that such division corresponds with the various defects identified by the Underlying Complaint, *see* [Doc. 11-3 at ¶ 15], and the timeline, [Doc. 11-4 at 12].[5] Given the fact that Plaintiff has been represented not only in this action but in the Underlying Action, this Court respectfully declines to speculate, or craft, any argument particularly in the context of a default judgment. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments on behalf of litigants).

To allow the Court to accurately determine MUSIC's proportional share of the settlement amount, CSU is **ORDERED** to file a Supplemental Motion for Default Judgment of no more than 10 pages explaining its position, addressing why time-on-risk allocation is even applicable given the Policies' language and any allocation of the settlement costs, that is supported by specific proof, no later than **October 12, 2026**. Until that amount is ascertained, the Court cannot enter final judgment. *Mrs. Condies Salad*, 858 F. Supp. 2d at 1220. **<u>Plaintiff is specifically advised that failure to file a timely</u>**

[5] Indeed, from the timeline attached as part of Exhibit 4 to the Motion, it appears that some of the occurrences may have arisen prior to March 1, 2020—potentially beyond the scope of MUSIC's coverage. [Doc. 11-4 at 12–13].

**Supplemental Motion for Default Judgment will result in the Court's entry of final judgment based solely on the defense costs and the interest that flows from that amount**.

**B. Interest**

The Court agrees that prejudgment interest at 8% per annum is warranted here to prevent unjust enrichment, beginning on the date that the Complaint was served, July 8, 2025. *See* [Doc. 11 at 13–14; Doc. 5 at 2]; Colo. Rev. Stat. § 5-12-102(1) (interest at the rate of eight percent per annum is recoverable "for all moneys . . . after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs"); *see also Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1028 (Colo. 2011) ("Pre-judgment interest on damage awards not involving personal injury, such as property damage, is governed by section 5-12-102, C.R.S. (2010)."). Once the Court ascertains the amount of damages related to the settlement amount, the Court will apply prejudgment interest to the total damages amount.

Additionally, post-judgment interest will be awarded on the total damages amount. *See* [Doc. 11 at 14 (citing 28 U.S.C. § 1961(a)–(b) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury Yield . . . . Interest shall be computed daily to the date of payment . . ., and shall be compounded annually."))].

**C. Attorney's Fees**

CSU's request for leave to file a separate motion for attorney's fees, [Doc. 11 at 15], is **GRANTED**. Colorado law authorizes the award of fees in cases such as this one

where the court has found equitable subrogation. *See EMC Ins. Cos. v. Mid-Continent Cas. Co.*, 884 F. Supp. 2d 1147, 1176 (D. Colo. 2012) (citing *Wheeler v. Reese*, 835 P.2d 572, 577 (Colo. App. 1992) ("[I]f the trial court finds that the incident resulting in liability was covered by the policy, then . . . the insurer also will be liable for attorney fees from the insured's action against insurer for breach of duty to defend.")). CSU must comply with this District's Local Rules, *see* D.C.COLO.LCivR 54.3, and Federal Rule of Civil Procedure 54(d)(2) in its motion for attorney's fees to be filed no later than **30 days after final judgment is entered in this case**.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion for Default Judgment Against Defendant [Doc. 11] is **GRANTED in part**;

(2) Plaintiff **SHALL FILE** a Supplemental Motion for Default Judgment, no longer than 10 pages, addressing why time-on-risk allocation is applicable given the Policies' language and apportionment of the settlement payment no later than **October 12, 2026. <u>Plaintiff is specifically advised that failure to file a timely Supplemental Motion for Default Judgment will result in the Court's entry of final judgment based solely on the defense costs and the interest that flows from that amount</u>**; and

(3) Plaintiff may file a timely motion for attorney's fees, supported by affidavits and exhibits, pursuant to Federal Rule of Civil Procedure 54(d)(2) and District of Colorado Local Rule 54.3 no later than **30 days after final judgment is entered in this case**.

DATED: September 11, 2026

BY THE COURT:

______________________________
Nina Y. Wang
United States District Judge